Affirmed and Memorandum Opinion filed November 20, 2008








Affirmed and Memorandum Opinion filed November 20, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01033-CR

____________

 

DEANA ELIZABETH COALE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th
District Court

Harris County, Texas

Trial Court Cause No. 1116719

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Deana Elizabeth Coale, pleaded guilty to state
jail felony theft and attempted theft.  The trial court found appellant guilty
of both offenses and sentenced her to two years= incarceration. 
In a single issue, appellant contends that she received ineffective assistance
of counsel because her attorney failed to:  (1) adequately investigate the
case, (2) properly prepare appellant for a presentence interview, and (3)
present mitigating evidence at the punishment hearing.  We affirm.








Background

Appellant pleaded guilty to unlawfully appropriating cash
in the value of between $1,500 and $20,000 from complainant Malaak Abushaaban. 
She also pleaded guilty to the attempted theft of between $80,000 and $100,000
from complainant Charles Hollis.

In the presentence investigation (PSI) report, the
investigator summarized a phone conversation with Abushaaban, during which
Abushaaban stated that he owned a company which sold water purification
systems.  According to Abushaaban, appellant was working as a salesperson for
an independent contractor when she forged a contract for a sale purportedly to
Cheryl Peterson and was paid a commission by Abushaaban.  Appellant=s scheme was
revealed when the financing company called Peterson to verify the contract.

At the punishment hearing, Peterson testified that she had
known appellant for over twenty years and that they had been close friends. 
Appellant moved in with Peterson when appellant was having trouble with her
boyfriend.  At some point, appellant offered to give Peterson a water
softener.  Peterson subsequently received a phone call from a financing
company, which informed her that she was 60-days delinquent in paying for the
equipment.  The company also informed her that a check with Peterson=s name on it had
been returned for insufficient funds.  Peterson later discovered that appellant
had forged Peterson=s name to the water softener contract and
had put Peterson=s name and information on a temporary
check for a bank account not owned by Peterson.  Peterson said that she did not
give appellant permission to sign such a contract or check.  As a result of
appellant=s conduct, Peterson says that she now has a lien
against her property and has negative entries in her credit history.  When
asked what she thought of appellant=s request for
probation, Peterson told the court that appellant Ahas been on
probation many times, [and] it has not helped her.@








Charles Hollis also testified at the hearing, explaining
that appellant formerly worked for him as a water purification equipment sales
representative.  According to Hollis, appellant forged customers= names to
contracts that would have qualified her for over $86,000 in commissions. 
Appellant=s scheme was discovered before the commissions were
paid.  Hollis encouraged the court to sentence appellant to at least seven to
ten years= incarceration.

In the PSI report, the investigator noted that in a
face-to-face interview, appellant denied any wrongdoing.  She specifically
denied forging the contract or the temporary check.  Appellant also testified
at the hearing on her own behalf.  She acknowledged that she pleaded guilty,
that she accepted responsibility, and that she had signed a confession
regarding the contracts she submitted while working for Hollis.  She then
suggested that the problem with the contracts for Hollis was not her fault, and
she stated that she signed the confession under duress.  She further insisted
that her commissions on those contracts would not have been as high as Hollis
claimed.  Appellant acknowledged telling Peterson that she wanted to put a
water softener in Peterson=s home.  Appellant again denied forging
Peterson=s name to the
contract or the temporary check but admitted telling Peterson that she would
pay for the equipment with her commissions check from Abushaaban.  Appellant
said that she still feels obligated to pay for the water softener but never
received her commissions to be able to do so.  Appellant claimed that the
temporary check belonged to her and that she put it in the work file Ajust to show that
first payment would have been made.@  Appellant
insisted that she did not intend to cause Peterson to have bad credit or a lien
against her property.








On cross-examination, appellant acknowledged telling the
judge at the plea proceeding that she was pleading guilty because she was
guilty and for no other reason.  Indeed, she denied having previously denied
any wrongdoing to the PSI investigator.  She said that AI accept
responsibility to the extent that I have stated.@  Appellant also
agreed that the confession she signed was accurate.  She contended, however,
that Hollis=s damage claims were inflated.  While she acknowledged
that she told Peterson she was going to give Peterson a water softener,
appellant continued to deny forging Peterson=s name on the
contract or the temporary check.  At the close of the punishment hearing, the
trial court found appellant guilty of both charges and sentenced her to two
years= confinement to
run concurrently.

Appellant subsequently filed a motion for new trial,
contending that her trial counsel (1) inadequately investigated the case, (2)
improperly prepared her for the PSI interview, and (3) failed to present any
mitigating evidence at the punishment hearing.  Attached to the motion was an
affidavit from appellant=s new counsel stating that she had
received from prior counsel=s assistant what the assistant represented
to be prior counsel=s entire file on appellant=s case.  The file
in question is also attached to the motion and includes: the PSI report,
various motions, notices, and court forms, and a database information sheet
regarding the charged offenses, which also contains six handwritten lines
regarding the facts of the case.  In her affidavit, new counsel further stated
that appellant related to her the information contained in the motion for new
trial and that such information is true to the best of counsel=s knowledge.

Also attached to the motion is what purports to be an AInmate=s Declaration.@  This document
appears to signed by appellant, although it was not notarized or otherwise
witnessed.  In this declaration, appellant stated that her prior counsel was
always late to court appearances and never had time to talk with appellant
about the facts.  Appellant said that counsel told her to plead guilty because
the judge would probably follow counsel=s recommendation
for probation.  Appellant further complained that counsel failed to return her
calls either before or after the interview with the investigator.  According to
the declaration, counsel also failed to tell appellant that she needed to
obtain witnesses on her behalf for the punishment hearing and failed to prepare
appellant for the questions that would be asked at the hearing.








Additionally, an affidavit by a criminal defense attorney
was attached to the motion.  In the affidavit, the attorney opined that it
would be unprofessional for an attorney to (1) participate in a guilty plea knowing
that the client would later deny guilt, and (2) fail to attend a PSI interview
with his or her client.  Lastly, several letters from appellant=s family,
attesting to her good qualities, were attached to the motion.  The letters were
not notarized and are not in affidavit form.  The trial court denied the motion
during an extremely brief hearing at which appellant=s counsel did not
attempt to introduce any evidence or request that the trial court consider the
items attached to the motion.

Standards of Review








The Sixth Amendment to the United States Constitution
guarantees the right to reasonably effective assistance of counsel in criminal
prosecutions.  U.S. Const. amend.
VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In reviewing
an ineffective assistance claim, an appellate court Amust indulge a
strong presumption that counsel=s conduct [fell] within the wide range of
reasonable professional assistance; that is, [appellant] must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.@  Strickland v.
Washington, 466 U.S. 668, 689 (1984).  Under the two‑pronged Strickland
test, in order to demonstrate ineffective assistance of counsel, a defendant
must first show that counsel=s performance was deficient, i.e.,
that his assistance fell below an objective standard of reasonableness; second,
a defendant must affirmatively prove prejudice by showing a reasonable
probability that, but for counsel=s unprofessional
errors, the result of the proceeding would have been different.  Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Id. at 813. 
Appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective.  Id.  In the majority of cases, the record on
direct appeal is simply undeveloped and cannot adequately reflect the alleged
failings of trial counsel.  Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998).  This is particularly true when the alleged deficiencies are
matters of omission and not of commission revealed in the record.  Id. 
A proper record is best developed in a habeas corpus proceeding or in a motion
for new trial hearing.  Jensen v. State, 66 S.W.3d 528, 542 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).  The case before us is not a habeas
corpus proceeding, and while appellant did file a motion for new trial, no
evidentiary hearing was held on the motion.

Representation may fall beneath an objective standard of
reasonableness if counsel fails to conduct an adequate pretrial investigation. 
See Wiggins v. Smith, 539 U.S. 510, 521-22, 533-34 (2003).  Counsel has
a duty to make reasonable investigations or reasonable decisions that make such
investigations unnecessary.  Id. at 521-22.  A particular decision not
to investigate must be directly assessed for reasonableness under all the
relevant circumstances, allotting great deference to counsel=s judgments.  Id.
at  521-22, 533-34.  Counsel=s failure to adequately prepare witnesses
can also raise questions as to the effectiveness of the representation.  Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).  Lastly, counsel may
also be deemed ineffective for failing to investigate, interview, and present
favorable witnesses in the punishment phase.  See Lair v. State, No.
01-07-00414-CR, 2008 WL 2611879, at *13 (Tex. App.CHouston [1st
Dist.] 2008, pet. filed); Milburn v. State, 15 S.W.3d 267, 270 (Tex.
App.CHouston [14th
Dist.] 2000, pet. ref=d).

Discussion








This case highlights the difficulty of assessing an
attorney=s performance
without the benefit of an evidentiary hearing.  Again, appellant asserts that
her counsel was ineffective because she did not adequately investigate the case
or prepare appellant for the presentence interview and because she did not present
any mitigating evidence at the punishment hearing.  However, there is no
evidence in the record regarding any of these allegations.  Trial counsel did
not testify, so we do not know what she did to investigate the case, what she
did to prepare appellant for the interview, whether she talked to any
potentially favorable witnesses for appellant, or if so, why she chose not to
call them.[1] 
See Jackson, 973 S.W.2d at 957 (explaining that in the majority of
cases, the record on direct appeal is simply undeveloped and cannot adequately
reflect the alleged failings of trial counsel); see also Rylander, 101
S.W.3d at 111 (Atrial counsel should ordinarily be afforded
an opportunity to explain his actions before being denounced as ineffective@).  While often
the absence of the attorney=s testimony leaves us without an
understanding of the strategic reasoning behind the attorney=s choices, here,
the absence of such testimony leaves us without knowledge of what the attorney
actually did to investigate and prepare this case.

The new attorney=s affidavit and
the attached case file, supposedly from trial counsel=s office, likewise
fail to establish what trial counsel did to investigate the case or prepare for
the punishment hearing.  To begin with, neither the affidavit nor the file were
introduced into evidence.  See Jackson v. State, 139 S.W.3d 7, 20-21
(Tex. App.CFort Worth 2004, pet. ref=d) (holding that
an affidavit attached to a motion for new trial does not constitute evidence
unless it is admitted into evidence at the hearing on the motion).[2] 
Furthermore, even if admissible and admitted into evidence, the affidavit and
case file would at most demonstrate what was in the file.  They do not
demonstrate the extent of trial counsel=s investigation or
preparation.  Counsel may have taken numerous steps not memorialized in the
file.  We just do not know.








Similarly, the Inmate=s Declaration,
which appellant supposedly signed, was not introduced into evidence, was not
notarized, was not otherwise in affidavit form, and does not purport to detail
the extent of trial counsel=s investigation or preparation.  Also,
appellant did not testify at the hearing.  The expert affidavit attached to the
motion is very careful to not state any facts, only opinions based on assumed
facts.  Lastly, none of the attached letters purportedly signed by potential
witnesses indicate whether or not the witnesses spoke with trial counsel. 
These letters also were not notarized or admitted into evidence.

In summary, there is no evidence to show what trial counsel
did to investigate or to prepare her client for the interview, and there is no
evidence as to whether she spoke to any witnesses who might have spoken
favorably about appellant or, if she did, why she decided not to have them
testify.  Accordingly, we find that appellant has failed to prove by a
preponderance of the evidence that counsel was ineffective.  See Thompson,
9 S.W.3d at 813.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 20, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P. 47.









[1]  On the matter of counsel=s failure to call character witnesses, compare this
case to Lair v. State, in which the appellant introduced into evidence
testimony from trial counsel regarding why he decided to not interview or call
potential character witnesses as well as affidavits from the potential
witnesses.  2008 WL
2611879, at *13.  Based on this evidence,
the court of appeals concluded that trial counsel provided ineffective
assistance in the punishment phase.  Id. at *14.





[2]  In Bahlo v. State, 707 S.W.2d 249, 251-52
(Tex. App.CHouston [1st Dist.] 1986, no pet.), and again in Labib
v. State, 239 S.W.3d 322, 333-34 (Tex. App.CHouston [1st Dist.] 2007, no pet.), the First Court of Appeals noted
the general rule that affidavits attached to motions for new trial do not
constitute evidence, but then explained that if the trial court and the parties
treat the affidavits as evidence at the hearing on the motion, the affidavits
are effectively admitted into evidence and can be considered as evidence on
appeal.  There is no indication in the record before us that the trial court or
the parties considered the subsequent attorney=s affidavit as evidence at the hearing on the motion for new trial.